**SO ORDERED.**

**SIGNED this 06 day of January, 2011.**



_____
ROBERT E. NUGENT
UNITED STATES CHIEF BANKRUPTCY JUDGE

_____

PUBLISHED

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| VINCENT R. McMULLEN, | ) | Case No. 09-13283 |
| QUINNDA S. McMULLEN, | ) | Chapter 13 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| LAURIE B. WILLIAMS, CHAPTER 13 | ) | |
| TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Adversary No. 09-5315 |
| | ) | |
| CAPITAL ASSET RECOVERY, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

1

The parties submitted this adversary proceeding on stipulated facts and briefs.[1] The Trustee invokes her hypothetical lien creditor powers under § 544(a) to avoid defendant's lien in a vehicle on the basis that defendant's security interest became unperfected when the note and security agreement were assigned to it and it failed to cause its name to be shown on the title and in the Kansas Department of Revenue Motor Vehicle Division's records.[2] The defendant asserts that nothing in the motor vehicle code requires it to amend its predecessor's filing or notation on the title in order to retain a perfected lien in the vehicle.

Jurisdiction

The parties stipulated to the Court's jurisdiction and entry of a final order in this matter. The Trustee's claim for lien avoidance is a core proceeding under 28 U.S.C. § 157(b)(2)(K) over which this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 157(b)(1) and § 1334(b).

The case law and bankruptcy law treatises generally recognize a chapter 13 trustee's standing to avoid liens and exercise strong-arm powers under § 544.[3] The defendant here does not contend otherwise.

Facts

---

[1] Adv. Dkt. 22, 25, and 27.

[2] Laurie B. Williams, the Chapter 13 trustee, appeared by counsel Christopher T. Micale. The defendant Capital Asset Recovery LLC appeared by its attorneys Elizabeth A. Carson and Karin N. Tollefson.

[3] *See generally,* Keith M. Lundin & William H. Brown, CHAPTER 13 BANKRUPTCY, 4TH EDITION, § 60.1, Sec. Rev. June 10, 2004, www.Ch13online.com. *See also, McRoberts v. Transouth Fin. (In re Bell),* 194 B.R. 192 (Bankr. S.D. Ill. 1996); *In re Steele,* 403 B.R. 882 (Bankr. D. Kan. 2009); *In re McAlister*, 371 B.R. 923 (Bankr. E.D. Wis. 2007); *In re Lewis*, 363 B.R. 477 (Bankr. D. S.C. 2007); *In re Bonner,* 206 B.R. 387 (Bankr. E.D. Va. 1997); *In re Church*, 206 B.R. 180 (Bankr. S.D. Ill. 1997); *Lucero v. Green Tree Fin. Serv. Corp. (In re Lucero),* 199 B.R. 742 (Bankr. D.N.M. 1996), *rev'd on other grounds,* 203 B.R. 322 (10th Cir. BAP1996).

The stipulations of fact and attached exhibits show that on June 23, 2007, Vince McMullen purchased a used 2004 Chevrolet truck from a dealership in Cheney, Kansas. He signed a promissory note and security agreement granting the dealer a purchase money security interest in the vehicle. Thereafter, the dealer assigned the paper to Finance Company of Kansas ("Finance Company") who caused its lien to be shown on the title records at the Motor Vehicle Division of the Kansas Department of Revenue (KDOR). Sometime in February 2008, Finance Company sold and assigned its interest to United Finance ("United"). Pursuant to an agreement entered into in October 2008, United sold and transferred its interest in the McMullen contract and vehicle to defendant Capital Asset Recovery LLC ("CAR"). Neither United nor CAR caused their names to be shown in the KDOR records or on the vehicle title. Finance Company's name remains on the title as lienholder.

The McMullens filed this chapter 13 case on October 6, 2009. They claim the 2004 Chevy truck as exempt. The Trustee commenced this lien avoidance action on December 21, 2009. Debtors chapter 13 plan was confirmed April 6, 2010.

Issue

The Court views the issue before it as follows: Is an assignee of a properly perfected security interest in a vehicle required by law to "re-perfect" the security interest after assignment and transfer of the security interest or does the original perfection continue in the assignee?

Analysis

When a secured creditor takes a security interest in a motor vehicle after the original certificate of title to that vehicle has been issued (*i.e.*, a used vehicle), that creditor's means of perfecting its security interest is defined by KAN. STAT. ANN. § 84-9-311 (2009 Supp.) and KAN.

3

STAT. ANN. § 8-135(c)(6) (2009 Supp.). Section 9-311(a) excuses a creditor from filing a financing statement when the collateral is covered by a state certificate-of-title statute.[4] That statute specifically references compliance with § 8-135 as it provides that a security interest in a vehicle is deemed perfected upon delivery of "documents appropriate under any such law . . . as prescribed in subsection (c)(6) of K.S.A. 8-135 . . . ."[5] Section 9-311(b) states that compliance with the certificate of title statutes is the equivalent of filing a financing statement under Article 9. Therefore, we initially look to the motor vehicle code to determine whether the security interest currently owned by the defendant was properly perfected in the first instance.

KAN. STAT. ANN. § 8-135(c)(6) provides:

> When a person acquires a security interest *that such person seeks to perfect* on a vehicle subsequent to the issuance of the original title on such vehicle, such person shall require the holder of the certificate of title to surrender the same and sign an application for a mortgage title in form prescribed by the division. Upon such surrender such person shall immediately deliver the certificate of title, application, and a fee of $10 to the division. Delivery of the surrendered title, application and tender of the required fee shall perfect a security interest in the vehicle as referenced in K.S.A. 84-9-311, and amendments thereto.[6]

As noted above, compliance with this process operates to perfect the initial lender's security interest. There is no question here that Finance Company adequately complied with § 8-135(c)(6) and perfected its security interest in the Chevy. It was duly noted as the lienholder on the title and registration receipt.

---

[4] KAN. STAT. ANN. § 84-9-311(a)(2). *See also,* KAN. STAT. ANN. § 84-9-310(b)(3) (Security interests perfected by other methods under § 84-9-311 is an exception to the required filing of a financing statement as a condition of perfection).

[5] KAN. STAT. ANN. § 84-9-311(a)(2).

[6] KAN. STAT. ANN. § 8-135(c)(6) (2009 Supp.).

4

The Trustee relies on the "when a person acquires a security interest" language in § 8-135(c)(6) to argue that each subsequent assignee of the lien had a duty to secure the surrender of the title from the debtor, surrender it to the Division, and re-perfect its interest in the truck. This reading of the title statute is incorrect in several ways. First, the words that anchor the Trustee's theory are followed by the words "that such person [the lender] seeks to perfect." A perfected security interest that is assigned is already perfected, suggesting that an assignee would not "seek to perfect" it again. Second, the Trustee's argument ignores the presence and effect of KAN. STAT. ANN. § 84-9-310(c) (2009 Supp.). As CAR aptly points out, that provision says –

> (c) **Assignment of perfected security interest.** If a secured party assigns a perfected security interest or agricultural lien, a filing under this article is not required to continue the perfected status of the security interest against creditors of and transferees from the original debtor.[7]

As this statute plainly states, no one need file notice of an assignment of a financing statement in order for it to remain perfected as to the creditors and transferees of the debtor. As filing under the motor vehicle code is the equivalent of filing a financing statement for Article 9 purposes, in the absence of some language in the motor vehicle code that specifically overrides § 84-9-310(c), CAR was not required to "re-perfect" when it took an assignment of Finance Company's lien. The Official UCC Comment to § 9-310(c) states that the provision "applies to the assignment of a security interest perfected by compliance with a statute . . . under Section 9-311(b), *such as a certificate-of-title statute.*"[8] The Comment further states that "unless the [certificate-of-title] statute expressly provides to the contrary" the interest remains perfected even if the assignee takes no

---

[7] KAN. STAT. ANN. § 84-9-310(c).

[8] KAN. STAT. ANN. § 84-9-310, OFFICIAL UCC COMMENT 4 (Emphasis added.).

5

action.[9]

Further support for this conclusion is found in KAN. STAT. ANN. § 84-9-514(b) which states that a secured party "may" assign all or part of its power to file a financing statement by filing an amendment to its financing statement. The Official Comment to that section calls this "a permissive device" and expressly refers to § 9-310(c).[10]

In short, this Court is unable to locate any contrary provision in the motor vehicle code that would override § 84-9-310(c). Nor is this Court convinced that such a provision would be practical to implement. While creditors and transferees of a debtor might find it convenient to ascertain from the record who the present holder of a security interest is, the Kansas Legislature has not seen fit to make that a legal requirement of vehicle security interest holders or, indeed, of *any* personal property security interest holders.[11]

The Court has reviewed numerous decisions by both the Kansas appellate courts and the Kansas bankruptcy court that address perfection of a security interest in a titled vehicle and concludes that none of them speaks to the effect of an assignment of a perfected security interest. The stipulated facts in the case at bar are distinguishable and the prior case law is therefore not particularly helpful in reaching a determination of the issue before the Court.

---

[9] *Id.*

[10] KAN. STAT. ANN. § 84-9-514, OFFICIAL UCC COMMENT 2. The Court also observes that among the papers executed with the sale, assignment and transfer of the security interest to CAR is a Power of Attorney, appointing CAR as agent and attorney in fact to "receive and endorse, on Principal's behalf, any certificate of title related to the Property only for purposes of transferring Principal's lien to Agent." *See* Adv. Dkt. 22-3 (Exhibit 3 attached to Stipulations).

[11] As noted in Official UCC Comment 2 to § 84-9-514, a secured party's *permitted* assignment of power to amend the financing statement is useful "so that inquiries concerning the transaction would be addressed to the assignee [*i.e.* the current holder of the security interest]."

The Court has also reviewed the interplay between Article 9 of the Uniform Commercial Code and Kansas' certificate of title statute. The Court recognizes that the duration and renewal of perfection of a security interest perfected pursuant to a state certificate-of-title statute is governed by the certificate-of-title statute.[12] But here, the Court finds nothing in the Kansas certificate-of-title statute that expressly addresses an assignment of a perfected security interest in a motor vehicle. Nothing in the certificate-of-title statute suggests that a perfected lien in a vehicle terminates or lapses upon assignment of that security interest. Indeed, in the context of a manufactured home, Judge Somers concluded in *In re Wedman* that absent lapse or termination of perfection (*i.e.* a lien release executed by the lender), the perfected lien continues and the bankruptcy trustee seeking to avoid a lien that was unquestionably perfected at one time, has the burden of proving that the perfection somehow lapsed or was terminated.[13] Judge Somers concluded that the Kansas Manufactured Housing Act did not provide for automatic lapse or termination of the certificate of title each time the manufactured home is sold after the certificate of title has issued.[14] Rather, perfection of the security interest by notation on the certificate of title continues until a new certificate of title is issued for the same home, unless the secured party executes a lien release in the

---

[12] KAN. STAT. ANN. § 84-9-311(c) (2009 Supp.).

[13] 374 B.R. 819 (Bankr. D. Kan. 2007) (Lender's perfected lien on manufactured home continued where borrower sold manufactured home to buyers who assumed obligation on earlier purchase-money loan and no new certificate of title was issued that did not reflect the lender's security interest and lender never executed lien release)

[14] The titling and perfection of lien in manufactured homes under the Kansas Manufactured Housing Act, KAN. STAT. ANN. § 58-4201 *et seq* (2005), enacted in 1991, parallels the motor vehicle code and was formerly contained in the motor vehicle certificate-of-title statute, KAN. STAT. ANN. § 8-135.

interim.[15] In the case at bar, no new certificate of title has issued since the debtors' purchase of the Chevy and Finance Company's perfection of its lien and none is required under § 8-135. The ownership of the vehicle has not changed by sale, transfer, assignment or otherwise. Likewise, Finance Company has never released the lien. The trustee has not borne her burden of proving that the lien in the vehicle ever lapsed or terminated under § 8-135.

Finally, the Court finds validation of its conclusion in treatise author Barkley Clark's discussion of the precise issue that is before the Court here – "Must the Assignee of a Security Interest in a Motor Vehicle Get Its Lien Noted on the Title?"[16] Analyzing state certificate of title statutes and the Uniform Commercial Code, he persuasively concludes that the answer is "no." Apart from a lone Texas bankruptcy court decision that was ultimately reversed, "[n]o other court ha[s] ever construed a state certificate of title statute to impose . . . a re-titling requirement [on assignees of security interests to apply for a new title showing the name of the assignee as lienholder]."[17] This result is even more compelling here, where Kansas' certificate of title statute, § 8-135, contains no provision regarding assignment of liens.[18]

---

[15] *See* KAN. STAT. ANN. § 58-4204 (2009 Supp.).

[16] Barkley and Barbara Clark, 2 THE LAW OF SECURED TRANSACTIONS UNDER THE UNIFORM COMMERCIAL CODE, ¶ 15.09 (2010 Rev. Ed ).

[17] *Id.* at p. 15-5. *See In re Clark Contracting Services, Inc.,* 2008 WL 5459818 (Bankr. W.D. Tex. 2008), *rev'd* 2010 WL 4386715 (W.D. Tex. 2010). *See also In re Johnson* 407 B.R. 364 (Bankr. E.D. Ark. 2009).

[18] KAN. STAT. ANN. § 84-9-311(c), provides ". . . duration and renewal of perfection of a security interest perfected by compliance with [a certificate-of-title] statute . . . are governed by the statute . . . *In other respects, the security interest is subject to this article."* (Emphasis added). *See e.g., Agricultural Services, Inc. v. Fitzgerald (In re Field),* 263 B.R. 323 (Bankr. D. Idaho 2001); *The Bank of New York v. Leake (In re Wuerzberger),* 284 B.R. 814 (Bankr. W.D. Va. 2002).

Conclusion

The Court concludes that Finance Company properly perfected its security interest in the Chevy by notation of its lien on the certificate of title in accordance with Kansas' certificate-of-title statute. Pursuant to KAN. STAT. ANN. § 84-9-310(c) that perfection continued unabated through the subsequent assignments of the security interest by Finance Company to United, and then by United to CAR. CAR was not required to re-title the vehicle or "re-perfect" the lien in the Chevy. The Trustee is not entitled to avoid CAR's perfected security interest in the vehicle. Accordingly, judgment will be entered for the DEFENDANT on the Trustee's complaint.

# # #

9

Case 09-05315    Doc# 28    Filed 01/06/11    Page 9 of 9